NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STANDARD FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MTU DETROIT DIESEL, INC., et al.,<br><br>Defendants. | Civil Action No. 07-3827 (GEB)<br><br><br>MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge**

      Currently pending before the Court is Plaintiff Standard Fire Insurance Company's ("Standard") motion to amend its Complaint. Standard seeks leave to file a Second Amended Complaint in order to assert an additional claim against both Defendant MTU Detroit Diesel, Inc. ("MTU") and Defendant Johnson & Towers, Inc. ("Johnson & Towers") (collectively, "Defendants") under the New Jersey Consumer Fraud Act (the "New Jersey CFA"), N.J.S.A. 56:8-1, *et seq*. The Court has reviewed the papers submitted in support of and in opposition to Standard's motion, and considers Standard's motion without oral argument pursuant to FED.R.CIV.P. 78. For the reasons stated below, Standard's motion is denied.

**I.    Background**

      In 2003, Peter Cherasia ("Cherasia"), a non-party in this matter, purchased a motor yacht that was equipped with two 12V2000 marine diesel engines. After purchasing the yacht, Cherasia obtained a policy of marine insurance from Standard insuring same. On August 25, 2005, a fuel leak occurred at the yacht's starboard main engine, which resulted in a fire that

damaged the yacht. Due to the damage caused by the fire, Standard paid approximately $510,000.00 for repairs to the yacht.[1]

On August 1, 2007, Standard filed a Complaint against MTU, the manufacturer of the engine used in Cherasia's yacht, asserting product liability claims. In its Complaint, Standard seeks to recover damages from MTU related to the cost of repairs made to Cherasia's yacht as a result of the August 25, 2005 fire. Standard later amended its Complaint to add claims against Johnson & Towers, the distributor and servicer of the engine at issue. As set forth in its Amended Complaint, Standard's claims against Johnson & Towers stem from Johnson & Towers' alleged failure to perform maintenance on the engine at issue in a non-negligent and workman like manner. Standard now seeks to amend its Complaint a second time in order to assert a New Jersey CFA claim against both MTU and Johnston & Towers.

Standard argues that it should be permitted to amend its Complaint to add a New Jersey CFA claim under the liberal standard set forth in FED.R.CIV.P. 15(a)(2), which specifies that "[t]he court should freely give leave when justice so requires." In this regard, Standard argues that it did not delay in seeking the proposed amendment because it only learned of Defendants' alleged "knowing omissions with knowledge and intent to deceive Plaintiff" after discovery commenced. (Pl. Br. at 4). Further, Standard contends that it has a meritorious New Jersey CFA claim based on MTU and Johnson & Towers' unconscionable business practice of intentionally concealing information from consumers regarding problems with the fuel lines used in the engine

---

[1] A second fuel leak, which also resulted in a fire, occurred on or about June 2, 2006 at the yacht's port main engine. As with the first fire, Cherasia's yacht was similarly damaged by this one. The June 2006 incident, however, is not at issue as all disputes related to this second fire have been settled.

at issue which caused leaks, which in turn caused fires like the August 25, 2005 fire that damaged Cherasia's yacht.  Standard argues that MTU and Johnson & Towers knew of leakage problems associated with the fuel lines used in the12V2000 marine diesel engines since at least 1999 and that they deliberately kept this information, which is material to a transaction involving the sale of a vessel, from consumers with the intention that consumers would rely upon the concealment.  In support of this argument, Standard points to various service bulletins issued by MTU, which Johnson & Towers received, detailing leakage problems with the fuel lines used in the engine model found in Cherasia's yacht as well as to an email between MTU and Johnson & Towers, dated July 7, 2006, which Standard claims shows that Defendants were suppressing information that could be used to their detriment if a lawsuit involving the leakage problems associated with the engine model found in Cherasia's yacht ever evolved.

In addition, Standard argues that despite Defendants' claims to the contrary, it has standing to bring a claim under the New Jersey CFA because "[a]ny person who has suffered an 'ascertainable loss of moneys' as a result of an unconscionable commercial practice may sue under the Act" and "[i]t is undisputed that Standard Fire sustained an 'ascertainable loss' of in excess of $500,000[.]" (Pl. Reply Br. at 2-3 (quoting N.J.S.A. 56:8-19)).  On this point, Standard notes that neither MTU nor Johnson & Towers have pointed "to any provision of either the New Jersey Consumer Fraud Act or case law that holds that an insurer cannot bring a claim under the Consumer Fraud Act." (*Id*. at 2).

Further, Standard argues that in deciding a motion to amend, the Court should not examine the merits of the proposed amended pleading, as it is only if the non-movant establishes that the proposed amended complaint would not survive a motion to dismiss for failure to state a

claim that the Court should deny a proposed amendment as futile.  In this regard, Standard argues that MTU's "facile" attacks regarding Standard's proposed New Jersey CFA claim do not meet this standard.  Similarly, Standard argues that Johnson & Towers' claim that Standard's proposed amendment is futile because Standard failed to plead fraud with specificity is likewise deficient.  Specifically, Standard claims that Johnson & Towers' failure to (1) disavow knowledge that fuel leaks on the engine at issue were common; (2) aver that it took action to alert buyers, like Cherasia, of problems with fuel leaks in 12V2000 marine diesel engines; or (3) deny that it received documents from MTU, like technical service bulletins, concerning the potential for fuel leaks is fatal to Johnson & Towers' futility argument.

      Both MTU and Johnson & Towers oppose Standard's motion to add a New Jersey CFA claim to its Amended Complaint.  MTU argues that Standard's proposed amendment is futile both because Standard lacks standing to bring a New Jersey CFA claim and because Standard's proposed amended claim lacks merit.  With respect to standing, MTU argues that "Standard Fire Insurance never explains how its subrogation rights extend to issues related to the original purchase of the yacht."  (MTU Opp. Br. at 3).  MTU claims that it is "hornbook law" that subrogation rights permit the insurer to succeed to its insured's rights in relation to the insured event, which here is the August 25, 2005 fire, not Cherasia's purchase of the yacht in 2003.  As such, MTU contends that Standard lacks standing to assert the New Jersey CFA claim set forth in the proposed Second Amended Complaint.

      MTU further argues that "New Jersey law has held that an assignee of claims against a defendant did not have standing to assert claims under the New Jersey Consumer Fraud Act, because the intent of the Act is to protect consumers from fraud, not consumers' assignees."  (*Id.*

at 3 (citing *Levy v. Edmund Buick-Pontiac, Ltd.*, 270 N.J. Super. 563 (Law Div. 1993))).  Like the assignee in *Levy*, MTU argues that, here, Standard "has not suffered any ascertainable loss arising out of alleged conduct related to the purchase of the yacht at issue[,]" and therefore lacks standing to pursue a New Jersey CFA claim.

In addition, MTU contends that "New Jersey law also held that an insurance company, suing as subrogee of its insured, cannot assert a claim for punitive damages."  (*Id*. at 4 (citing *Colonial Penn. Ins. Co. v. Ford*, 172 N.J. Super. 242 (Law Div. 1979))).  MTU argues that one of the main purposes of the New Jersey CFA is to punish wrongdoers through the award of treble damages and that, as a matter of law, Standard, an insurance company, not a consumer, is not entitled to such an award.  MTU also argues that it would be an improper windfall to allow Standard to recover any amount greater than that which it paid under its policy with Cherasia.

Further, MTU argues that even under FED.R.CIV.P. 15's liberal standard, Standard's proposed New Jersey CFA claim lacks merit and should be denied as futile.  MTU argues that Standard's claim that "the alleged acts of MTU-DD an/or Johnson & Towers 'might have' influenced Mr. Cherasia's decision to purchase the yacht at issue" are clearly insufficient.  (MTU Opp. Br. at 5).  In addition, MTU claims that Standard's proof of the alleged New Jersey Consumer Fraud Act violations all pre-date the build date of the actual engine at issue by approximately three years and/or address issues not relevant to the claims at issue.  MTU also argues that the e-mail cited to by Standard as evidence that it has a valid New Jersey CFA claim in fact, when viewed in its entirety without Standard's selective omission of information, shows the MTU never suppressed information concerning the fuel lines used in its engines that could be used to either MTU or Johnson & Towers' detriment.

Johnson & Tower joins in MTU's opposition to Standard's motion to amend on the ground that Standard lacks standing to bring a New Jersey CFA claim. Further, Johnson & Towers argues that Standard's proposed amendment is futile because Standard's allegations concerning Johnson & Towers' New Jersey CFA violations do not meet the heightened pleading requirements of FED.R.CIV.P. 9(b). In this regard, Johnson & Towers argues that Standard's broad allegation that "'Defendants violated the provisions of Section 56:8-2 of the Act, by misrepresenting, suppressing, failing to disclose, or by concealing material information, with the intention that Plaintiff's subrogee rely on such omission in purchasing a 61-foot motor yacht, 'SHARK BYTE'"" (Johnson & Towers Opp. Br. at 4 (quoting Ex. F to Stern Aff. at ¶ 50)), coupled with Standard's argument that had Cherasia been made aware of the fuel line leaks, then he "might have elected to purchase engines from another manufacturer" is not enough to meet the heightened pleading requirements employed for claims of fraud. (*Id*. (internal quotation marks omitted).

In addition, Johnson & Towers claims that not only has Standard "failed to plead fraud with the requisite specificity," but the facts asserted by Standard in its motion also "do not demonstrate any intentional, knowing and/or deliberate omission by Johnson & Towers with regard to the engine at issue." (*Id*.) Specifically, Johnson & Towers claims that the email referenced by Standard, which was written two days after the June 2006 fire, a fire not at issue here and about which no claims were ever brought against Johnson & Towers, does not establish that Johnson & Towers had any pre-existing knowledge of the alleged design defect with the fuel lines in the engine in question, nor does it prove an intent to mislead, nor could it as the email post dates Cherasia's purchase of his yacht by three years and therefore is "completely irrelevant

to plaintiff's claim and certainly cannot be the basis for a claim under the Consumer Fraud Act." (*Id*. at 5). Similarly, Johnson & Towers argues that the service bulletins it received from MTU do not support Standard's New Jersey CFA claim. Johnson & Towers notes that "MTU provided service bulletins to all its distributors and service managers pertaining to updates and/or modifications of the service manual." (*Id*. at 6). Johnson & Towers argues that its "only role is to incorporate and effectuate the updates and/or modifications as prescribed by the manufacturer of the engine." (*Id*.) Johnson & Towers claims that "MTU adjusted the torque specifications on high pressure fuel lines in order to provide for proper sealing" and that "Johnson & Towers followed these specifications." (*Id*.) Johnson & Towers contends that "[n]othing in these facts even remotely supports plaintiff's argument that Johnson & Towers, 'knew for years of problems with the fuel lines which cause fuel leaks . . and deliberately kept or omitted this information from consumers.'" (*Id*. (quoting Pl. Br. at 5)). Thus, Johnson & Towers argues that Standard's proposed New Jersey CFA claim fails to state a claim upon which relief could be granted and consequently should be denied as futile.

II.  Analysis

Pursuant to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be

liberally granted.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction.  *See Long*, 393 F.3d at 400.  Delay alone, however, does not justify denying a motion to amend.  *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate.  *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984).

Further, a proposed amendment is appropriately denied where it is futile.  An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (Internal quotation marks and citations omitted).  In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard.  *See Alvin*, 227 F.3d at 121.  Under Rule 12(b)(6), a motion to dismiss will be granted if the plaintiff fails to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

8

allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (citations omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Id*. at 1965 (citations omitted). When determining whether a claim should be dismissed under Rule 12(b)(6), the factual allegations set forth in the pleading must be accepted as true and viewed in the light most favorable to the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).

### A. Standing

The New Jersey CFA makes it unlawful for any person to

> act, use or employ[] . . . any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged."

N.J.S.A. 56:8-2. A private right of action under the New Jersey CFA exists for "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful" by the Act. N.J.S.A. 56:8-19. While the term "consumer" is not defined in the Act,

> '[t]he entire thrust of the Act is pointed to products and services sold to consumers in the popular sense. . . . Thus, the CFA 'is not intended to cover every transaction that occurs in the marketplace[,]' but, rather, '[i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself.''

*Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Arc Networks, Inc. v. Gold Phone Card Co.*, 333 N. J. Super. 587, 589-90 (Law Div 2000) (citation omitted). In determining whether a plaintiff has standing to bring a New Jersey CFA claim, the Court therefore examines the charter of the transaction.

Further, in order for a business entity "'to be a consumer respecting the transaction in question,'" such that it has standing to sue under the Act, "'the business entity must be one who uses (economic) goods, and so diminishes or destroys their utilities.'" *Schering-Plough Corp. Intron/Temodar Consumer Class Action*, Master File No. 2:06-cv-5774 (SRC), 2009 WL 2043604, at * (D.N.J. July 10, 2009) (quoting *City Check Cashing, Inc. v. Nat'l State Bank*, 244 N.J. Super. 304, 309 (App. Div. 1990) (internal quotation marks and citations omitted). Thus, a business entity "may qualify as a person under the Act when it finds itself in a consumer oriented situation, . . . such as when it acts as the purchaser of a tow truck, . . . as the purchaser of a yacht, . . . or as the purchaser of computer peripherals[.]" *J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F. 3d 1259, 1273 (3d Cir. 1994) (internal quotation marks and citations omitted).

Here, Standard did not purchase the yacht in question for its own use. Indeed, Standard did not even purchase the yacht at issue. Instead, Standard contracted with Cherasia to receive a stream of payments from Cherasia in return for its promise to insure the yacht that Cherasia purchased and used. Under these circumstances, the Court finds that Standard is not in a "consumer oriented situation." Consequently, as in *Schering-Plough*, where the Court held that the third party payors ("TTPs"), which did not "use or consume the drugs they purchase[d,]" but rather "essentially serve[d] as middlemen or insurers, paying all or part of the cost of a

beneficiary's drugs in return for a stream of payments from the beneficiary[,]" were "not consumers entitled to sue under the NJCFA[,]" the Court finds that Standard lacks standing to pursue its proposed New Jersey CFA claim. *Schering-Plough*, 2009 WL 2043604, at *32. The fact that Standard's subrogee, Cherasia, might qualify as a consumer under the Act does not change the Court's analysis. Further, because Standard lacks standing to sue under the New Jersey CFA, the Court finds that Standard's proposed amendment would not survive a motion to dismiss. The Court therefore denies Standard's motion to amend because it would be futile.

      B.      **Standard's New Jersey CFA Claim**

In addition, the Court finds that even if Standard had standing to pursue its proposed New Jersey CFA claim, Standard's proposed amendment would be futile. In order to assert a claim under the New Jersey CFA, Standard must allege each of the following three elements: "(1) unlawful conduct by defendant[s]; (2) an ascertainable loss by [Standard]; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). Moreover, because Standard's proposed New Jersey CFA claim sounds in fraud, in order to survive a Rule 12(b)(6) motion to dismiss, Standard must also meet the pleading requirements of FED.R.CIV.P. 9(b), which require a party to "state with particularity the circumstances constituting fraud or mistake." *See Slim CD, Inc. v. Heartland Payment Sys.*, No. 06-2256, 2007 U.S. Dist. LEXIS 62536 at *32 (D.N.J. Aug. 22, 2007) (holding that "[t]he pleading requirements of Rule 9(b) apply to . . . NJCFA claims[.]")

"The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged" so that the defendants have an opportunity to respond meaningfully to the complaint, "and to prevent false or unsubstantiated charges." *Rolo v. City of Investing Co.*

*Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998), *abrogation on other grounds recognized by Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000) (quoting *Serville Indust. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984)).  Thus, while plaintiffs need not "plead the 'date, place or time' of the fraud," in order to satisfy Rule 9(b), plaintiffs must employ some "means of injecting precision and some measure of substantiation into their allegations of fraud." *Id*. (quoting *Serville*, 742 F.2d at 791).

      Here, rather than plead fraud with particularity, Standard merely alleges that "Defendants violated the provisions of Section 56:8-2 of the Act, by misrepresenting, suppressing, failing to disclose, or by concealing material information, with the intention that Plaintiff's subrogee rely on such omissions in purchasing a 61-foot motor yacht 'SHARK BYTE' ("the vessel")" and that "Plaintiff's subrogee has suffered damages as a result of the actions of Defendant's [sic] which damages include, but are not limited to $522,000.00."   (Pl. Proposed Second Amended Compl. at ¶ 50-51).  These broad statements, without further detail, fail to describe the circumstances of either MTU or Johnson & Towers' alleged fraud with particularity, and therefore violate *Twombly's* requirements.  While Standard might be able to supplement its allegations to meet the heightened pleading requirements of Rule 9(b), as currently drafted, Standard's proposed New Jersey CFA allegations fail to raise Standard's "right to relief above the speculative level[.]" *Twombly*, 127 S.Ct. at 1965 (citations omitted).  Thus, the Court finds that Standard's proposed New Jersey CFA claim is futile.  Further, given the fact that the Court has already determined that Standard lacks standing to pursue its proposed NJ CFA claim, the Court shall not extend Standard the opportunity to attempt to meet the pleading requirements of Rule 9(b).

### III. Conclusion

For the reasons stated above, Standard's motion to amend its Complaint is DENIED. An appropriate Order follows.

Dated: August 13, 2009

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
