NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE STANDARD FIRE INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MTU DETROIT DIESEL, INC., et al.,<br><br>　　　　Defendants. | Civil Action No. 07-3827 (GEB)<br><br><br>MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge**

　　Currently pending before the Court is Defendant Johnson & Towers, Inc.'s ("J&T") motion to amend its Answer in order to assert crossclaims against MTU Detroit Diesel, Inc. ("MTU") for contribution and indemnification. [Docket Entry No. 38]. MTU opposes J&T's motion. The Court has fully reviewed the papers submitted in support of and in opposition to J&T's motion, and considers same without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth below, J&T's motion to amend is DENIED.

**I.　　Background**

　　In 2003, Peter Cherasia ("Cherasia"), a non-party in this matter, purchased a motor yacht that was equipped with two 12V2000 marine diesel engines. After purchasing the yacht, Cherasia obtained a policy of marine insurance from The Standard Fire Insurance Company ("Standard") insuring same. On August 25, 2005, a fuel leak occurred at the yacht's starboard

main engine, which resulted in a fire that damaged the yacht. Due to the damage caused by the fire, Standard paid approximately $510,000.00 for repairs to the yacht.[1]

On August 1, 2007, Standard filed a Complaint against MTU, the manufacturer of the engine used in Cherasia's yacht, asserting product liability claims. In its Complaint, Standard seeks to recover damages from MTU related to the cost of repairs made to Cherasia's yacht as a result of the August 25, 2005 fire. Standard later amended its Complaint to add claims against J&T, the distributor and servicer of the engine at issue. As set forth in its Amended Complaint, Standard's claims against J&T stem from J&T's alleged failure to perform maintenance on the engine at issue in a non-negligent and workman like manner. On August 6, 2008, after being served with Standard's Amended Complaint, J&T filed its Answer to same in which it also asserted several separate defenses. J&T now seeks to amend its Answer in order to assert crossclaims against MTU for contribution and indemnification.

J&T argues that it should be permitted to amend its Answer in order to bring claims against MTU for contribution and indemnification pursuant to FED.R.CIV.P. 15(a), which "mandates that leave to amend shall be 'freely given.'" (J&T Br. at 4 (quoting Rule 15(a))). J&T claims that its motion should be granted because "[t]he specific language contained in the indemnification clause of the Distributor Agreement serves as the basis for Johnson & Towers' crossclaim for indemnification." (*Id*. at 5). J&T further claims that "the assertion of a crossclaim for contribution is permissible based on the discovery to date." (*Id*.) In addition, J&T

---

[1] A second fuel leak, which also resulted in a fire, occurred on or about June 2, 2006 at the yacht's port main engine. As with the first fire, Cherasia's yacht was similarly damaged by this one. The June 2006 incident, however, is not at issue as all disputes related to this second fire have been settled.

argues that for purposes of succeeding on its motion to amend, it does not need to prove the merits of its proposed crossclaims for contribution and indemnification.  Instead, J&T argues that its motion can only be denied upon a showing that its proposed crossclaims are futile (i.e., they would not survive a motion to dismiss).  Indeed, J&T claims that "the only basis for denying the motion would be if defendant MTU could demonstrate that, 'it appears beyond doubt that the party can prove no set of facts in support of the claim which would entitle the party to relief[,]'" a showing that J&T claims MTU cannot make (*Id*.)

MTU opposes J&T's motion to amend, which J&T filed more than a year and a half after it was brought into this case, arguing that J&T's proposed crossclaims for contribution and indemnification are futile.  First, with respect to J&T's argument that the Distributor Agreement supports its proposed crossclaim for indemnification, MTU argues that a simple review of that Agreement and Standard's claims against J&T as asserted in the Amended Complaint establishes that the Distributor Agreement does not support J&T's claim for indemnification.  In this regard, MTU argues that the Distributor Agreement "essentially provides for indemnification for claims asserted against a Distributor where there are no allegations of direct fault against the Distributor[.]" (MTU Opp'n Br. at 3).  MTU further argues that the Distributor Agreement also clearly indicates that where allegations other than those set forth in the indemnification provision are pursued, MTU does not have to indemnify the Distributor. (*Id*.)  Here, MTU claims that Standard's "Amended Complaint clearly asserts claims against J&T based on J&T's **own conduct** – J&T's alleged breach of the implied warranty of workmanlike service for the service work it performed on the engine at issue and/or J&T's own negligent repair work." (*Id*.)  MTU further contends that "J&T's motion to amend does not even attempt to explain how claims of J&T's own negligence/wrongful conduct

3

fall under the indemnification provision of the Agreement." (*Id.*) As such, MTU argues that J&T's proposed crossclaim for indemnification based on the Distributor Agreement would fail as a matter of law and consequently is futile.

Similarly, MTU argues that to the extent J&T is also seeking to assert crossclaims for contribution and indemnification based on tort theories, those claims are likewise futile. Specifically, MTU contends that while "not mentioned anywhere in J&T's brief," J&T's proposed Amended Answer with Crossclaims also asserts claims of contribution against MTU "based on a claim that J&T and MTU-DD are 'joint tortfeasors' and/or under the Comparative Negligence Act." (*Id.* at 4 (citing J&T's proposed Amended Answer and Crossclaims)). MTU argues that these claims are also futile because "under New Jersey law, when the only damage at issue is property damage to the product at issue, negligence-based claims are barred by New Jersey's economic loss doctrine." (*Id.*)

## II. Analysis

Here, J&T's motion to amend its Answer in order to assert crossclaims for contribution and indemnification was filed on January 14, 2010. The Court notes that pursuant to the terms of the Pretrial Scheduling Order entered in this matter, motions to amend the pleadings were initially scheduled to be filed no later than May 23, 2008. [Docket Entry No. 9]. That date was later extended by Court Order to June 13, 2008. [*See* Docket Entry No. 10]. As a result, in order for the instant motion to be considered timely, the Court must modify the deadline for amended pleadings set forth in the Court's previous scheduling orders.

Prior scheduling orders may be modified upon a showing of good cause. FED.R.CIV.P. 16(b)(4); L.Civ.R. 16.1(a)(2). Generally speaking, a showing of good cause requires the party

seeking the modification of the scheduling order to establish that "despite its diligence, it could not reasonably have met the scheduling order deadline." *Hutchins v. United Parcel Service, Inc.*, No. 01-CV-1462 WJM, 2005 WL 1793695, *3 (D.N.J. July 26, 2005). Here, J&T does not address the need to modify the date for its motion to amend its Answer. Nevertheless, the Court finds that good cause exists to permit J&T's motion to be heard and as such the Court shall *nunc pro tunc* extend the deadline for filing such motions up to and including January 14, 2010.

In coming to this conclusion, the Court notes that J&T did not file its Answer in this case until August 6, 2008, at which time the deadline for filing motions to amend the pleadings had already passed. Thus, while the Court does not condone J&T's failure to seek a modification of the scheduled deadline,[2] given the fact that that deadline expired before J&T filed its initial Answer in this matter, the Court finds good cause to modify its prior scheduling order. As such, the Court considers J&T's motion to amend pursuant to the more liberal standards outlined in FED.R.CIV.P. 15(a).

According to Rule 15(a), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

---

[2] The Court notes that after becoming involved in this matter, J&T had several opportunities to request an extension of the deadline for filing motions to amend the pleadings. For example, J&T could have raised the issue during one of the seven telephone conferences that occurred in this matter after it became involved in same. Similarly, J&T could have sought the extension when other modifications to the scheduling order were made. In this regard, the Court notes that since J&T filed its Answer, the scheduling order has been substantially modified on three separate occasions and yet not once did J&T raise the issue that it might seek to file a motion to amend.

undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

Here, MTU opposes J&T's proposed amendments solely on futility grounds. Consequently, the Court shall begin its analysis by examining whether J&T's proposed amended crossclaims are futile. A proposed amendment is appropriately denied where it is futile. An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard (*see Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

While J&T argues that "the only basis for denying [its] motion would be if defendant MTU could demonstrate that, 'it appears beyond doubt that the party can prove no set of facts in support of the claim which would entitle the party to relief[,]'" J&T is incorrect. (J&T Br. at 5). The standard quoted without citation by J&T in its brief was that set forth by the Supreme Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957): "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." However, two recent Supreme Court cases have clarified the Rule 12(b)(6) standard and have, in fact, "abrogated the rule

established in *Conley v. Gibson*[.]" *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, Civ. No. 97-cv-3496 DRD, 2009 WL 5064757, *2 (D.N.J. Dec. 16, 2009). Those case are *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

When considering whether a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Twombly*, 550 U.S. at 570). In other words, the facts alleged must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. While a pleading does not need to contain "detailed factual allegations," a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Further, although the Court must, in assessing a motion to dismiss, view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Indeed, in evaluating the sufficiency of a pleading, the Court has an obligation to "distinguish factual contentions . . . from

'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Walsh Sec., Inc.*, 2009 WL 5064757, at *3 (quoting *Iqbal*, 129 S.Ct. at 1949). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citation omitted). As a result, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*.

J&T seeks leave amend his Answer in order to assert a 3-count Crossclaim, which consists of five separate paragraphs and three "Wherefore" statements. Of the five paragraphs, two simply note that J&T "repeats and realleges each and every allegation contained in the First Count as if the same were more fully set forth at length herein and made a part hereof." (J&T Proposed Crossclaims at Second Count, ¶1; Third Count, ¶1). The three remaining paragraphs read as follows:

### FIRST COUNT

> 1. Although this Defendant, Johnson & Towers, Inc., denies any liability whatsoever, it nonetheless asserts that any and all injuries and damages sustained by the Plaintiff were the proximate result of the negligence of co-Defendant, MTU Detroit Diesel, Inc., and demands contribution pursuant to the Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1, et seq., and the Comparative Negligence Act of New Jersey from Co-Defendant, MTU Detroit Diesel, Inc., for the proportionate share of any and all sums that may be adjudged against this Defendant in this action. . . .

### SECOND COUNT. . .

> 2. Although this Defendant, Johnson & Towers, Inc., denies any liability whatsoever, it nonetheless asserts that any and all injuries and damages sustained by the Plaintiff were the proximate result of the negligence of Co-Defendant, MTU Detroit Diesel, Inc., which negligence was primary and active, and if this Defendant is found liable to the Plaintiff with respect to said injuries and damages, such liability resulted solely from secondary, imputed, vicarious or

> passive negligence, and Co-Defendant aforesaid are liable to this Defendant, by way of common law and/or contract to indemnify and defend Defendant, and to hold and save Defendant harmless from any and all claims as to the subject incident and damages and for any and all sums which this Defendant may be required to pay in this action. . . .
>
> **THIRD COUNT**. . .
>
> 2.  This Defendant, Johnson & Towers, Inc., asserts that Co-Defendant, MTU Detroit Diesel, Inc., had a contractual obligation to provide defense and indemnification to Johnson & Towers, Inc., with respect to all claims for damages asserted in this lawsuit, and Defendant, MTU Detroit Diesel, Inc. has breach that contractual obligation.

(Kearns Cert. at Ex. D, Proposed Amended Answer and Crossclaims at 8-9).

A review of the above-referenced substantive allegations contained in J&T's proposed crossclaims establish that they are completely deficient under the standards set forth by Rule 12(b)(6), as applied by the Supreme Court in *Twombly* and *Iqbal*. While the crossclaims do not need to contain "detailed factual allegations," they must set forth sufficient facts to raise J&T's "right to relief above the speculative level." *Twombly*, 550 U.S. at 555. J&T's proposed crossclaims, which are devoid of any facts, fail to meet this standard. Simply put, J&T's proposed crossclaims consist of nothing more than "a formulaic recitation of the elements of" claims for contribution and indemnification. *Id*. As such, they "will not do." *Id*.

For example, J&T's first proposed counterclaim for contribution simply states that any damages suffered by Standard were "the proximate result of the negligence" of MTU and "demands contribution pursuant to the Joint Tortfeasors Act . . . and the Comparative Negligence Act of New Jersey[.]" (Kearns Cert. at Ex. D, Proposed Amended Answer and Crossclaims at 8). J&T does not specify how MTU was negligent or provide any facts regarding why the Joint

Tortfeasors Act and/or Comparative Negligence Act are applicable to MTU's alleged conduct in this matter.    Similarly, J&T's second proposed counterclaim for indemnification based on "common law and/or contract" formulaically recites that the damages suffered by Standard were "the proximate result of the negligence" of MTU, "which negligence was primary and active" and states that if J&T is found liable to Standard with respect to the aforementioned damages, then "such liability resulted solely from secondary, imputed, vicarious or passive negligence" and as such, MTU will be liable for same to J&T.  (*Id*. at 9).  Again, J&T's proposed crossclaim does not set forth any facts explaining how MTU was negligent or why MTU's alleged negligence was primary and J&T's secondary.

Likewise, J&T's third proposed crossclaim merely provides that MTU "has a contractual obligation to provide defense and indemnification to Johnson & Towers, Inc., with respect to all claims for damages asserted in this lawsuit," and that MTU "has breached that contractual obligation."  (*Id*.)  The crossclaim does not cite to the contractual provision that creates the alleged obligation, nor does it provide any facts establishing that the claims brought by Standard against J&T are of the type covered by the indemnification provision or that J&T complied with the contract's provision for requesting indemnification.  Further, with respect to this crossclaim, the Court has had the benefit of reviewing the Distributor Agreement that contains the indemnification provision relied upon by J&T, as it was attached to J&T's moving papers and relied upon by MTU in its opposition.  The Court's review of that provision in conjunction with Standard's claims asserted against J&T indicates that the type of claims brought against J&T are not covered by the indemnification provision.  J&T's failure to include any factual allegations to the contrary is also fatal to its crossclaim.

10

Thus, because J&T's proposed crossclaims consist of nothing more than legal conclusions, the Court finds that they fail "to state a claim to relief that is plausible on its face" (*Twombly*, 550 U.S. at 570), and, as such, do not "allow[] the court to draw the reasonable inference that [MTU] is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  As a result, the Court finds that J&T's proposed crossclaims would not survive a Rule 12(b)(6) motion to dismiss.  Consequently, the Court finds that J&T's proposed crossclaims are futile, and J&T's motion to amend is therefore denied.[3]

### III.   Conclusion

For the reasons stated above, J&T's motion to amend is DENIED.  An appropriate Order follows.

Dated: March 29, 2010

                                 s/Tonianne J. Bongiovanni
                               **HONORABLE TONIANNE J. BONGIOVANNI**
                               **UNITED STATES MAGISTRATE JUDGE**

---

[3] Because the Court denies J&T's motion to amend on futility grounds, the Court does not address whether J&T's motion would also be denied on other grounds.